## FORT QUITMAN LAND CO. v. MIER et al.
### No. 2652.

Court of Civil Appeals of Texas. Eastland.
May 7, 1948.

Rehearing Denied May 28, 1948.

Kemp, Smith, Brown, Goggin & White, and Eugene T. Edwards, all of El Paso, for appellant.

Burges, Scott, Rasberry & Hulse, of El Paso, for appellees.

LONG, Justice.

The parties will carry the same designation here as in the trial court. Plaintiff Fort Quitman Land Company instituted this suit against Pascual C. Mier and Pete Aguilar alleging that it is the owner of 2,240 acres of land in Hudspeth County, Texas, 800 acres of which are in cultivation; that the land is situated in the arid portion of Texas where rainfall is not sufficient to produce crops and the plaintiff is dependent upon water from the Rio Grande River with which to irrigate the land. That plaintiff and its predecessors in title had been using water from the river for such purposes since the year 1913 until the farming season of 1946 when the defendants prevented the use thereof. Plaintiff further alleged that many years prior to the institution of this suit plaintiff's predecessors in title constructed a diversion dam across the Rio Grande River and by the use of such dam and irrigation system plaintiff's predecessors in title diverted water from the river and used the same for irrigation purposes. That part of said irrigation system consisted of a canal from such diversion dam in the river to plaintiff's farm, a part of which canal was con-

structed across lands owned by the defendant Mier. That on September 25, 1931, defendant Mier conveyed to Frank Lea for the use and benefit of Dave Gill (predecessor in title of plaintiff) a right-of-way 50 feet wide running from the Rio Grande across the land owned by defendant Mier. That in the year 1937 the United States Government in its River Rectification Program constructed another diversion dam on the river under an agreement between the Government and defendant Mier and Dave Gill. Upon construction by the Government of such new dam, it became necessary to abandon a portion of the old canal across the land of the defendant and it was agreed and understood between Mier and Dave Gill that Mier would convey a new right-of-way to connect the old canal with the new dam constructed by the Government and that Mier, in turn, would take title to that portion of the old canal that was so abandoned. That in keeping with said agreement, Gill did abandon the portion of the old canal and at his own expense, constructed a new canal from the end of the siphon to the old canal and surrendered to Mier the portion of the old canal that was abandoned. That during the summer of 1946, the defendants Mier and Aguilar (Aguilar being the tenant of Mier and acting under his instructions) interferred with plaintiff's right to the flow of the water from the Rio Grande through said irrigation system and completely stopped such flow of water. Plaintiff prayed for recovery of a fee simple title to the 50 foot canal right-of-way across the land of the defendant Mier and in the alternative, that it be decreed that plaintiff have a perpetual easement to the use of such canal; for damages in the sum of $35,000 by reason of being deprived of the use of the water for irrigation purposes, for construction of plaintiff's water rights and for an injunction restraining defendants from interferring in any way therewith. Defendants filed a cross action for damages to their crop alleged to have been caused by flood waters claimed by them to have been diverted on to their land by plaintiff and its predecessor in title, Dave Gill. The case was tried before the court with the aid of a jury and based upon the answers of the jury to special issues, the court rendered a judgment denying recovery of damages by either party against the other for crop injuries and decreeing that plaintiff had an easement and right-of-way for a canal over the strip of land 50 feet wide, subject to the right of Mier to take water from said canal for the purpose of watering his present lands. The defendants were perpetually enjoined from withholding from plaintiff any amount of water not reasonably necessary for the irrigation of the present land of defendant Mier. From such judgment both plaintiff and defendants have appealed.

It is the contention of the plaintiff that the court erred in refusing to adjudge to plaintiff a fee simple title to the 50 foot strip of land. Plaintiff takes the position that under the deed and right-of-way agreement from Mier to Frank Lea dated September 25, 1931, there was vested in Lea (plaintiff's predecessor in title) a fee simple title to the 50 foot strip and that the court erred in not so holding. The instrument contained the usual granting clause. It conveyed first a tract of land consisting of 41.7 acres known as El Calero Banco. Following the description of this tract of land the instrument recites:

"A second tract being a right of way fifty feet wide for a canal for irrigating land, such a canal to run from the channel of the Rio Grande River on the northwest side of the lands of the Grantor herein, such lands known as Banco No. 319 by the name of El Guayuco, such tract containing 337.6 acres and known and designated as Banco El Guayuco No. 319, as mapped and made by the Joint International Boundary Commission of the two Governments, towit: The United States of America and The United States of Mexico, acting under the Treaty of 1905, and as shown upon the maps of the said Banco on file in the Land Office of the United States of America at Washington, and in the Land Office of the United States of Mexico, in the City of Mexico, said right-of-way for such canal to be located as now located upon the ground across that Banco, and the Grantor herein does reserve and

retain the right at all times hereafter to take water from said canal at any place, and at any time, when the same can be obtained by gravity flow from said canal for the purpose of watering and supplying the said lands of the Grantor herein, wherever such canal may serve such purpose usefully.

"This conveyance of canal and water rights shall entitle the Grantee, his heirs and assigns, to take water from the Rio Grande River at the diversion dam as now constructed in or across the said river. By this instrument neither the grantor herein, nor his heirs nor assigns shall be bound to maintain or do anything for the upkeep or operation of said canal or of the said right-of-ways herein granted to the Grantee; the Grantor reserves the right to construct bridges or passageways over said canal at such places as may be convenient or necessary for the use and operation of his own land. Said Banco No. 319 of 327 acres across which the fifty-foot right-of-way for canal is hereby granted is located now in the State of Texas, and in Hudspeth County, near the Rio Grande River, about 72 miles below the City of El Paso, Texas.

"To Have And To Hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Frank Lea, his heirs and assigns forever." This was followed by a general warranty.

It will be noted that the instrument describes the 50 feet involved as a second tract being a right-of-way 50 feet wide and sets out the purpose for which it is to be used, namely: "for a canal for irrigating land." It would not be necessary to set out the purpose for which such 50 foot strip was to be used if it had been the intention of the parties for the grantee to take a fee simple title thereto. The instrument goes further and sets out certain rights that the grantor has to take water from the canal. It further provided that the grantor was not required to do anything on the upkeep or operation of the canal or of "said right-of-way herein granted to the grantee."

It is clear to our minds that the instrument did not convey the 50 foot strip in fee simple and that the grantee did not acquire such a title but that the instrument, when construed as a whole, shows that an easement for the purpose of constructing a canal and transporting water from the river across the defendant's land was all that was granted. The trial court did not err in failing to vest a fee simple title in the plaintiffs to said 50 foot strip. Ladies Benev. Society of Beaumont v. Magnolia Cemetery Company, Tex.Civ. App., 268 S.W. 198, affirmed by the Commission of Appeals, 288 S.W. 812.

It is the further contention of the plaintiff that the trial court erred in failing to limit the right, which defendant Mier was adjudged to have, to take water from the canal to the land owned by him on September 25, 1931, the date of his deed to Frank Lea, and in permitting Mier to take water from the canal to a tract of land acquired by Mier since such time known as the Cook land. At the time of the conveyance from Mier to Lea, the only land owned by Mier in that vicinity was the 337.6 acres known as Banco No. 319. The 50 feet conveyed is described in the deed as follows: "A second tract being a right-of-way 50 feet wide for a canal for irrigating land, such canal to run from the channel of the Rio Grande River on the northwest side of the land of the Grantor herein, such lands known and designated as Banco No. 319 by the name of El Guayuco, such tract containing 327.6 acres."

In said instrument of conveyance, Meir reserved the right to take water from the canal at any place and at any time when the same could be obtained by gravity flow for the purpose of watering and supplying "the said lands of grantor." "Said" lands of grantor could only refer to grantor's 327.6 acres in Banco No. 319, that being the only land belonging to grantor mentioned in the instrument. It is our construction of the instrument that it was the intention of the parties that Mier should have the right to use water from the canal for the purpose of irrigating the land then owned by him in such Banco. In 1938 Mier acquired what is known as the Cook lands

situated some distance to the north of such irrigation project. We believe the trial court erred in not limiting the right of Meir to take water from the canal to irrigate the land owned by him on September 25, 1931 and in not decreeing that he had no right to use water from the canal for the purpose of irrigating the later acquired Cook land.

By counter point, the defendants contend the court erred in holding that plaintiff has an easement for the canal in question for the reason that same is based upon an oral agreement and contravenes Article 1288, Revised Civil Statutes of Texas (1925).

Gill bought and paid for the old right-of-way across the land of Mier in 1931. He paid for the construction of the canal and the expense incident to its upkeep. His title to such right-of-way is in writing.

As has been heretofore stated, plaintiff depended upon an oral agreement between Mier and Dave Gill for his rights in the new portion of the canal. The jury found that about August 7, 1937, it was verbally agreed in substance between the defendant Mier and Dave Gill that Meir would convey to Gill the 50 foot right-of-way along the line marked green on the plat attached to the written contract between the United States of America and Mier and wife and Gill and wife; that Gill, at his own expense, would construct the new canal along said right of way and abandon that portion of the old canal so rendered useless and permit Mier to make such use of the abandoned portion as he desired and further found that in constructing the new canal, Gill relied on such agreement and that he did abandon that portion of the old canal.

After Mier and Gill entered into such agreement, the evidence discloses that Gill, at his own expense, with the knowledge of Mier, constructed such new canal and began using it to transport water from the river to his farm. That such canal was used continuously from 1937 on down into 1946 by both Mier and Gill. It is further shown that Gill paid Mier the sum of $500 at one time, $1,000 at another time in cash, for the easement across his land. The findings of the jury have support in

the evidence and we believe the facts show the plaintiff has an easement therein by estoppel. "An easement may be created by estoppel. On this principle an easement arises where a grantor has conveyed a right-of-way by parol, upon the faith of which the grantee has expended money which will be lost if the use of the right is revoked." 15 Tex.Jur., page 788.

■ The location of an easement may be changed and where a change is made which does not impose a greater burden upon the servient estate, the easement is not thereby lost. This is also true where the owner of the servient estate acquiesces in and affirmatively ratifies the change by accepting the benefits. 15 Tex.Jur., page 804; Carleton v. Dierks, Tex.Civ.App., 203 S.W.2d 552; Fowler v. Matthews, Tex.Civ.App., 204 S.W.2d 80. The changing of the location of the canal did not impose a greater burden upon the land of Mier. The defendant Mier affirmatively ratified the change, by allowing Gill to expend money in constructing the new canal and by using water therefrom, in accord with the verbal agreement. Defendants cite Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216. It is true this is one of the leading cases in Texas on this question and it is there held that in order to relieve a parol agreement for the sale of land from the statute of frauds, that there must be: (a) payment of the consideration; (b) possession by the vendee; and, (c) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor or without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.

■ We agree with the principles as set out in Hooks v. Bridgewater. It is our belief that they are controlling in this case. Gill paid a valuable consideration for the easement across the land of defendant Mier. He abandoned the old right-of-way and Mier took possession of it and sold part of the land on which it was located and received all of the consideration therefor. The remainder of the old right-of-way is now in his possession. Gill went

into possession of the new right-of-way and has made use thereof in transporting water to his farm for many years. He has made valuable and permanent improvements thereon in that he paid the cost of construction and maintenance thereof amounting to several hundred dollars. Thus it will be seen that he is within the exception stated in Hooks v. Bridgewater.

There is no merit in the counter point of the defendants in which they claim that plaintiff's rights to the easement are barred by the four year statute of limitation. Vernon's Ann.Civ.St. art. 5531. As stated above, plaintiff has title to the easement by virtue of the facts as found by the jury and it was not necessary that plaintiff sustain an action for specific performance before recovering legal title. In other words, Gill was vested with legal title to the easement under the oral agreement with Gill when he entered into possession of the 50 foot strip, paid a valuable consideration therefor, and made valuable and permanent improvements thereon. The four years statute of limitation has no application here. Johnson et ux. v. Wood, 138 Tex. 106, 157 S.W.2d 146.

■ By other counter points, it is the contention of the defendants that plaintiff has no right to take water from the Rio Grande River to irrigate T. & P. R. R. Co. Surveys Nos. 25 and 26 and Dunham's Survey No. 327. It is contended that these surveys are non riparian. If such surveys are non riparian land, the defendants are not in any position to complain on account of plaintiff diverting water from the river to irrigate such surveys for the reason that defendant Mier is not a proprietor lower on the stream than plaintiff. The land of Mier is located on the river above the land of plaintiff. He gets water through the canal before it reaches plaintiff and he is in no way injured by reason of the fact that plaintiff diverts the water to non riparian land. Texas Company v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397;

Humphrey-Mexia Co. v. Arsenaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147.

■ We are of the opinion that the court properly enjoined defendants from withholding from plaintiff any amount of water not reasonably necessary for the irrigation of the land of defendant Mier. It is disclosed by the evidence that in the summer of 1946, when plaintiff's crops were suffering from lack of water, Gill went to the check gate on the canal on Mier's farm and found it boarded up, blocking the flow of water to the farm of plaintiff. Gill removed the boards and after he left, some one replaced them. This happened on several occasions. Other witnesses for the plaintiff testified about inspecting the check gate and found that it was boarded up in such a way as to block the flow of the water. It is further shown that the defendant Aguilar advised Gill that he did not own any land or right-of-way and told him not to take the clamps out of the canal at the check gate and to stay off of the place. Under the record in this case, it is our opinion that the court did not err in enjoining defendants from interferring with the reasonable use of the water by the plaintiff.

We have carefully considered all points and counter points raised by the briefs of the parties and except as stated herein, we find no merit in any of them and they are each expressly overruled.

It is our conclusion that the judgment of the trial court should be, and it is hereby reformed to the extent that it decrees that the defendant Mier has no right to use water from the canal to irrigate the Cook lands and that he is limited to the use of such water to irrigate land owned by him on September 25, 1931, and that such judgment, after being so reformed, should be and is in all things affirmed. The cost of this appeal is adjudged one-half against the plaintiff and one-half against the defendant Mier.

Judgment of the trial court reformed, and as reformed, is affirmed.