**Benjie SMITH d/b/a Oak Cliff Metals, Appellant,**

v.

**DASS, INC., Appellee.**

No. 05–07–01023–CV.

Court of Appeals of Texas, Dallas.

May 8, 2009.

Shawn M. McCaskill, Goodwin Ronquillo, L.L.P., Dallas, TX, for Appellant.

Michael H. Myers, John Thomas Wilson, Myers Wilson P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL and LANG.

## OPINION ON AMENDED MOTION FOR REHEARING

Opinion by Justice LANG.

On March 12, 2009, this Court issued an opinion affirming the trial court's judgment. Appellant Benjie Smith d/b/a Oak Cliff Metals ("Smith") filed a motion for rehearing on April 9, 2009. On April 29, 2009, with his April 9, 2009 motion still pending, Smith filed a motion for leave to file an amended motion for rehearing, to which he attached his amended motion for rehearing. By separate order, we have granted Smith's motion for leave to file an amended motion for rehearing. We deny Smith's amended motion for rehearing. In addition, we withdraw our March 12, 2009 opinion and vacate the judgment of that date. This is now the opinion of the Court.

This case involves a dispute over an agreement to purchase a parcel of real property. The trial court signed a judgment in favor of Smith awarding damages against appellee DASS, Inc. ("DASS") for breach of that agreement. However, appellant contends the trial court erred when it refused to sign a judgment granting specific performance or a declaratory judgment awarding equitable title. In his three issues on appeal, Smith specifically contends (1) the trial court abused its discretion by denying his election of the remedy of specific performance of the agreement to purchase, (2) the trial court erred by denying his request for the alternative remedy of a declaratory judgment awarding him equitable title to the real property, and (3) the trial court's purported reasons for denying the relief requested by him are erroneous and without merit.

For the reasons below, we decide Smith's first and second issues against him. We need not reach Smith's third issue. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Falcon Transit, Inc., a corporation owned by Benjie Smith, leased real property located at 523 Pontiac Avenue in Dallas from DASS, the owner of the real property, for the operation of a scrap metal business called Oak Cliff Metals. The written commercial lease agreement provided for a thirty-month term commencing February 1, 1999, with a monthly lease payment of $2000. In addition, Smith agreed to pay property taxes and utilities. DASS's director, Steve McFalls, signed the commercial lease agreement on behalf of DASS. Under a separate written lease agreement, Smith leased equipment on the premises for the same term from Texas Industrial Recycling Company ("TIRC"), a company owned by McFalls, for a monthly lease payment of $3000. McFalls signed the equipment lease agreement on behalf of TIRC.

Smith contends the parties executed a document dated August 31, 2001, titled "Pending Sale of Land" (the "Sale document"). The Sale document read as follows:

*Pending Sale of Land*
8/31/01

*From:*                                    *To:*

Texas Industrial Recycling          Benjie L. Smith

Scrap yard located at 523 Pontiac    *$100,000.
Avenu, Dallas, Texas, known as
Oak Cliff Metals

* To be paid $1500 plus property taxes per month until details on title are worked out between Benjie Smith's attorney and EPA.

The Sale document was purportedly signed by Smith, as "Buyer," and McFalls, as "Seller." In addition, Smith contends two August 31, 2001 bills of sale were signed by McFalls regarding sale of the leased equipment from TIRC to Smith. McFalls denies signing the Sale document or the bills of sale.

In a letter dated October 26, 2005, DASS and TIRC purported to provide Falcon Transit, Inc. with notice of termination of the commercial lease agreement and equipment lease agreement. According to the notice of termination letter, upon expiration of the thirty-month lease term on August 1, 2001, Falcon Transit, Inc. became a month-to month tenant of the premises at 523 Pontiac Avenue and maintained a month-to-month lease of the equipment. The notice of termination letter ordered Falcon Transit, Inc. to vacate the leased premises and return possession of the leased equipment no later than December 1, 2005. Smith responded by filing suit.

In his third amended petition, the pleading upon which the parties went to trial, Smith asserted several claims.[1] First, he pleaded a breach of contract claim, but alleged a mistake in the Sale document in naming TIRC as the seller, rather than DASS. Next, Smith requested (1) reformation of the Sale document to "reflect the actual agreement of the parties," and (2) a declaratory judgment that the Sale document, as reformed, was valid and enforceable, that he obtained equitable title to the real property at issue "on the date of payment of the last monies owed for the Property under the contract," and that he was entitled to "an adequate conveyance of the Property, including a transfer to Plaintiff of legal title."

Finally, Smith pleaded for specific performance of the Sale document, asserting in relevant part, "Plaintiff has performed all obligations imposed on Plaintiff by the [Sale document]. Plaintiff has fully paid Defendant the agreed purchase price." Smith requested defendants be required to comply with "the terms of the contract, as reformed, specifically that they be required to execute and deliver to Plaintiff an adequate and sufficient conveyance of title to the Property to Plaintiff."

The jury found[2] in answer to question 1 of the charge of the court that McFalls signed the Sale document. In answer to question 2 of the charge, the jury found before the Sale document was prepared

1. Causes of action asserted by Smith in his third amended petition, but not relevant to this appeal, included violations of the Texas Deceptive Trade Practices and Consumer Protection Act, common law fraud, and statutory fraud.

2. Smith's brief before this Court states the following, which is not disputed by DASS: The Charge of the Court signed by the trial court judge and the jury's answers thereto and verdict were lost or destroyed, and the parties did not have any copies of the signed Charge of the Court or the jury's verdict. The unsigned Charge of the Court contained in the trial court's file and the Clerk's Record constitutes a true, correct, and accurate copy of the Charge of the Court signed by the trial court judge and submitted to the jury upon which the jury returned its verdict. Tex.R.App. P. 34.5(e). (citations to record omitted). The trial court judge recited the jury's verdict into the reporter's record, and the facts herein regarding the jury's verdict are based on that record.

and signed, DASS and Smith orally agreed to the terms set forth in that document, but in the preparation of that document TIRC was erroneously written into the document instead of DASS as a result of a mutual mistake of the parties. The jury found in answer to question 3 of the charge that DASS failed to comply with the Sale document. In answer to question 4 of the charge, the jury awarded Smith $137,755 in damages for DASS's "failure to comply with the [Sale document]." Those damages included (1) $100,000 for "[m]oney paid by or on behalf of [Smith] pursuant to the [Sale document]"; (2) $15,314 for "[m]oney paid by or on behalf of [Smith] in excess of the amount required under the [Sale document]"; and (3) $22,441 for "[p]roperty taxes paid on or behalf [sic] of [Smith] pursuant to the [Sale document]." The remaining questions and answers in the charge are not pertinent to this appeal.

Smith filed a "Motion for Entry of Judgment." In that motion, Smith requested the trial court in relevant part (1) render and sign a judgment in favor of Smith in accordance with the jury's verdict and (2) reform the Sale document and order specific performance of that document, as reformed, by DASS. In defendants' response to Smith's motion for entry of judgment, they asserted in part Smith "is not entitled to the equitable remedy of specific performance because there is no evidence [he] has satisfied his obligations under the [Sale document]." The record does not contain a record of a hearing on Smith's motion for entry of judgment or show a ruling on that motion.

The final judgment stated it was "[b]ased upon the jury's verdict" and awarded Smith money damages in the amount of $137,755, attorney's fees, prejudgment interest, post judgment interest, and taxable costs of court. Further, the final judgment denied "[a]ll other relief requested by any party to this case."

In his "Motion to Modify, Correct or Reform the Judgment," Smith requested the trial court, in relevant part, (1) reform the Sale document and order specific performance of the reformed document on the part of DASS and conveyance of legal title to the real property, or (2) in the alternative, render a declaratory judgment Smith has equitable title in the real property "based on the jury's findings as to the existence of the agreement and Benjie Smith's compliance therewith" by "making the full and final payment (as found by the jury)." Following a hearing, the trial court denied Smith's motion to modify, correct, or reform the judgment.[3] This appeal timely followed.

## II. REQUIRED JURY FINDINGS

In his first and second issues on appeal, Smith contends, in essence, (1) the trial court abused its discretion by denying his election of the remedy of specific performance of the agreement in the Sale document and (2) the trial court erred by denying his request for the alternative remedy of a declaratory judgment awarding him equitable title as to the real property. DASS contends, in relevant part, Smith is not entitled to specific performance or equitable title because the facts required to support those remedies were not found by the jury. With respect to DASS's argument regarding required jury findings, we address Smith's first and second issues together.

---

**3.** Additionally, Smith filed a request for findings of fact and conclusions of law with respect to the trial court's denial of specific performance, reformation, and declaratory relief. The record does not show findings of fact and conclusions of law were issued by the trial court.

### A. Standard of Review and Applicable Law

#### 1. Specific Performance

■ Specific performance is an equitable remedy committed to the trial court's discretion. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex.App.-Dallas 2007, pet. denied). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.2004) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.* at 839.

■ The equitable remedy of specific performance may be awarded upon a showing of breach of contract. *Stafford*, 231 S.W.3d at 535. However, a party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex.2008); *see also 17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 258 (Tex.App.-Dallas 2002, pet. denied). When contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues. *DiGiuseppe*, 269 S.W.3d at 596; *Stafford*, 231 S.W.3d at 536 (citing *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex.1999)).

#### 2. Equitable Title

■ Equitable title is the present right to compel legal title. *See Travis Cent.* *Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex.App.-Austin 2004, no pet.). In *Johnson v. Wood*, 138 Tex. 106, 157 S.W.2d 146, 148 (1941), the parties entered into a written contract to convey certain real property by warranty deed upon payment of the agreed purchase price. *Id.* at 147. The jury found "Johnson made payment of all the monthly installments due under the contract." *Id.* The court concluded, based on the jury's findings, "Johnson had paid the purchase price and fully performed his obligations under the contract." *Id.* at 148. Upon such performance, the court held, Johnson became vested with equitable title in the property. *Id.; see also Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) ("Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract."); *White v. Hughs*, 867 S.W.2d 846, 849 (Tex.App.-Texarkana 1993, no writ) (same).

### B. Application of Law to Facts

With respect to specific performance, DASS argues in part in its brief before this Court that Smith did not submit appropriate jury questions relating to his performance of the material terms of the Sale document. Specifically, DASS contends

The [Sale document] states that the consideration for the purchase was to be paid "$1,500 plus property taxes per month until details on title are worked out between Benjie Smith's attorney and the EPA." Smith testified that the details on the title haven't been worked out as of the date of the trial proceedings. Moreover, Smith did not submit questions to the jury evidencing whether he

was ready, willing, or able to work out the details on title with the EPA.

(citations to record omitted). Therefore, DASS asserts, Smith is not entitled to the equitable relief of specific performance.

Similarly, with respect to equitable title, DASS asserts in relevant part, "Smith failed to submit questions to the jury providing evidence of his complete performance of the [Sale document], and therefore, cannot demonstrate that he is entitled to equitable title of the real property." In particular, DASS alleges, there was no finding of fact Smith performed "his obligations related to the EPA."

Smith asserts submission of any such questions to the jury was unnecessary. He states in his brief to this Court, "The jury correctly found in Question 4 that Smith had fully performed and complied with the [Sale document], and that Smith paid $15,314,00 in excess of the amount required under the [Sale document] to purchase the real property." Further, Smith asserts, he was entitled to a declaratory judgment awarding him equitable title in the real property "upon making the full and final payment under the [Sale document], whereby such equitable title vested by operation of law."

■ In his reply brief before this Court, Smith argues DASS's claim he failed to submit a question to the jury regarding his performance of the terms of the Sale document and therefore failed to "plead and prove that he complied with the terms" is "legally and factually without merit." Smith asserts he pleaded in his third amended petition (1) he fully performed all his obligations under the contracts, (2) he had already made all of the requisite lump sum and monthly payments to McFalls and DASS to complete the purchase of the real property pursuant to the Sale document, and (3) "[a]ll conditions precedent to Plaintiff's recovery have been performed, have occurred, or have been waived." [4] In addition, Smith contends he testified at trial the payments required under the Sale document had been made to McFalls and DASS. Further, Smith argues "[i]t is not necessary for a party requesting specific performance of a contract to plead and prove both (1) full performance and compliance with the contract and (2) being ready, willing, and able to perform and comply with that same contract."

■ Also in his reply brief, Smith asserts that, pursuant to rule 278 of the Texas Rules of Civil Procedure,

---

**4.** In a post-submission letter brief, Smith argues, inter alia, that pursuant to rule 54 of the Texas Rules of Civil Procedure, he had no burden to prove performance or compliance with the Sale document or obtain a jury finding on that issue. *See* Tex.R. Civ. P. 54 (party pleading performance of conditions precedent is required to prove only those specifically denied by opposite party). However, Smith's pre-submission briefs before this Court do not cite rule 54 or present that argument. Therefore, Smith's post-submission argument regarding his lack of burden pursuant to rule 54 presents nothing for this Court's review. *See Tex. Med. Ass'n v. Tex. Workers Comp. Comm'n*, 137 S.W.3d 342, 351 (Tex.App.-Austin 2004, no pet.) (argument waived where asserted during oral argument and in post-submission brief, but not in pre-submission

briefs); *see also City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 340 n. 4 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (argument waived where raised in letter brief filed after oral argument); Tex R.App. P. 38.1(f) (appellant's brief must state concisely all issues or points presented for review). Moreover, as a general rule, a party is required to present a complaint to the trial judge before being allowed to raise an issue on appeal. *See Ochoa v. Craig*, 262 S.W.3d 29, 32–33 (Tex.App.-Dallas 2008, pet. denied); Tex R.App. P. 33.1. The record shows testimony at trial from both sides regarding Smith's performance or compliance with the Sale document. However, the record shows no objection or complaint by Smith in the trial court regarding his alleged lack of burden to prove that issue.

DASS waived any purported complaint ... regarding the lack of jury charge question and jury finding on the specific issue of whether Smith complied with the [Sale document] by failing to (1) object to the omission of such a question or (2) request the submission of such a question in substantially correct wording during the jury charge conference before the trial court.

Accordingly, Smith contends, DASS cannot complain for the first time on appeal that a separate issue on Smith's compliance with the reformed Sale document was not submitted to the jury.

Finally, Smith argues in his reply brief that, given the jury's findings and answers as to the damages to him resulting from DASS's failure to comply with the reformed Sale document, the omission of a jury charge question on the issue of whether he complied with the Sale document was "immaterial and harmless error, if error at all."

### 1. Waiver Under Rule 278

Rule 278 of the Texas Rules of Civil Procedure addresses submission of jury questions, definitions, and instructions. *See* TEX.R. CIV. P. 278. Pursuant to rule 278, Smith asserts "DASS cannot complain for the first time on appeal that a separate issue on Smith's compliance with the reformed [Sale document] was not submitted to the jury." The portion of rule 278 cited by Smith provides

Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.

*Id.* Here, DASS is not asserting "[f]ailure to submit a question" as "a ground for reversal of the judgment." *See id.* Moreover, Smith does not explain how defendants were obligated to object when Smith did not submit a jury question on issues as to which he had the burden of proof. *See DiGiuseppe,* 269 S.W.3d at 596; *Cullins,* 171 S.W.3d at 533. We cannot agree with Smith that DASS has "waived any purported complaint ... regarding the lack of jury charge question and jury finding on the specific issue of whether Smith complied with the [Sale document]" pursuant to rule 278.

### 2. Specific Performance

■ "[A] plaintiff seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, and (2) the readiness, willingness, and ability to perform at relevant times." *DiGiuseppe,* 269 S.W.3d at 601. The record shows the Sale document, on its face, stated the purchase price was "[t]o be paid $1500 plus property taxes per month until details on title are worked out between Benjie Smith's attorney and EPA." Even assuming, without deciding, that the jury's answer to question 4 of the charge of the court found payment by Smith of the full amount of money required under the Sale document, such a finding does not address Smith's performance or compliance as to any obligations to work out title "details" with the EPA.

The testimony in the record regarding Smith's performance or compliance as to obligations to work out title details with the EPA is limited to the following testimony of Smith on cross-examination:

Q. Would you agree with me that if we're here today details on title haven't been worked out?

**A. Not specifically, no.**

In its brief on appeal, DASS asserts, "Smith testified that the details on the title haven't been worked out as of the date of the trial proceedings." Smith did not address that characterization of his testimony in his reply brief on appeal or in his post-submission supplemental brief. In his amended motion for rehearing, Smith cites the testimony set forth above and asserts counsel for DASS "asked Smith on cross-examination if Smith would agree that the details on title had not been worked out between Smith's attorney and the EPA as of the date of trial, and Smith answered 'no' he would not agree." However, the record shows that, rather than answering "no," Smith answered, "Not specifically, no." It is not clear from the record whether Smith's answer addressed (1) whether he agreed with his questioner, or not, or (2) whether the details on title had been worked out. Accordingly, the testimony is equivocal. We are cited to no other evidence in the record, nor can we find any, that addresses Smith's performance or compliance as to "details on title" having been "worked out." On this record, Smith did not conclusively establish the fact at issue. *See Gifford Hill Am., Inc. v. Whittington,* 899 S.W.2d 760, 764 (Tex.App.-Amarillo 1995, no writ) (equivocal testimony did not conclusively establish fact and submission to jury was therefore required).

Additionally, Smith argues in his reply brief on appeal "[i]t is not necessary for a party requesting specific performance of a contract to plead and prove both (1) full performance and compliance with the contract and (2) being ready, willing, and able to perform and comply with that same contract." According to Smith, given that he "pleaded and proved full performance and compliance with the [Sale document]," it would have been "inconsistent and un-necessary for [him] to likewise plead and prove that he was ready, willing, and able to perform." In support of that argument, Smith cites *Stafford* for the proposition "a party seeking specific performance must have either performed or tendered performance." *See Stafford,* 231 S.W.3d at 535. However, we disagree with Smith. *Stafford* does not address the precise issue presented here. *See id.* As noted above, the Texas Supreme Court has stated a plaintiff seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, *and* (2) the readiness, willingness, and ability to perform at relevant times. *See DiGiuseppe,* 269 S.W.3d at 593–94, 601.

When contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues. *See id.* at 596. Defendants did not concede or stipulate in the trial court Smith performed regarding working out title details or that he was ready, willing, and able to perform as to such details. *See id.* at 601. No jury questions were requested regarding Smith's performance or compliance as to title details or whether he was ready, willing, and able to perform. *See id.* at 593–94, 601. Also, there was no objection to the omission of such questions. *See id.* at 595. Those issues were ones on which Smith, as the party seeking specific performance, had the burden of proof at trial. *Id.* at 596. Because there are no jury findings on elements of specific performance as to which the facts were disputed and on which Smith had the burden of proof, we conclude the trial court's denial of Smith's request for specific performance was not an abuse of discretion. We decide against Smith on his first issue.

### 3. Equitable Title

As stated above, the jury's findings in question 4 of the charge of the court do not address Smith's performance as to obligations under the Sale document to work out title "details" with the EPA. Further, as discussed above, there was no finding of fact by the jury that Smith performed his obligations under the Sale document regarding title "details." Therefore, the record shows no jury finding Smith fully performed his obligations under the Sale document in order to show entitlement to equitable title. *See Johnson*, 157 S.W.2d at 148; *see also Cullins*, 171 S.W.3d at 533 ("Equitable title may be shown when the plaintiff proves that he has paid the purchase price and fully performed the obligations under the contract."). Accordingly, we conclude the trial court did not err in denying Smith's request for a declaratory judgment awarding Smith equitable title in the real property. Smith's second issue is decided against him.

### III. "PURPORTED REASONS" FOR DENIAL OF EQUITABLE RELIEF

In his third issue, Smith asserts the trial court's "purported reasons" for denying the relief requested by him are erroneous and without merit. Specifically, Smith contends (1) because DASS did not plead a statute of frauds defense, the trial court was not limited to the Sale document in determining the sufficiency of the description of the real property to be conveyed; (2) the issue of whether the Sale document was ambiguous was not pleaded by DASS, thus precluding the issue from being submitted to the jury; (3) because the evidence and testimony provided an undisputed description of the real property to be conveyed, that issue was not required to be submitted to the jury; (4) the parties intended for DASS to convey its title to the real property to Smith, and Smith is entitled to whatever title DASS holds in the property; (5) Smith properly filed breach of contract and declaratory judgment actions, rather than a trespass to try title action; and (6) DASS waived any complaint as to "the lack of a trespass to try title action."

We concluded above the trial court did not err in denying Smith's requests for specific performance and declaratory judgment awarding him equitable title because the record does not show the jury findings required for such relief. Therefore, regardless of whether the "purported reasons" speculated by Smith in his third issue as the bases for the trial court's denial of that relief are, as contended by Smith, "erroneous and without merit," Smith would not be entitled to the equitable relief he has requested. We need not address Smith's third issue.

### IV. CONCLUSION

We conclude the trial court's denial of Smith's request for specific performance was not an abuse of discretion because there are no jury findings on elements of specific performance as to which the facts were disputed and on which Smith had the burden of proof. Further, because the record shows no jury finding Smith fully performed his obligations under the Sale document, we conclude the trial court did not err in denying Smith's request for the alternative remedy of a declaratory judgment awarding Smith equitable title in the real property.

Smith's first and second issues are decided against him. We need not address Smith's third issue. The trial court's judgment is affirmed.